# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 APR -9 PM 4: 18

CLERK

BY_____
DEPUTY CLERK

_____X

SAMANTHA GROUT,

Plaintiff,

v.

AEG FUELS (ASSOCIATED ENERGY GROUP)    Case No. 2:26-CV-124
ALLEN LEE,
    and
SYMBIOTIC CONSULTING,

Defendants.

_____X

## COMPLAINT & JURY DEMAND

Plaintiff, Samantha Grout, appearing *pro se*, alleges as follows:

## I. PARTIES

1. **Plaintiff, Samantha Grout,** is an individual residing in Arlington, Bennington County, Vermont.

2. **Defendant AEG Fuels (Associated Energy Group)** AEG Fuels (Associated Energy Group) is a global aviation fuel supplier with a vast network, providing services in nearly every US state and numerous international locations, and does business in Vermont.  Their primary U.S. offices are located in Florida, Texas, and Nevada.

2a.    Defendant Allen Lee was an employee of AEG and the Director of Software.

3. **Defendant Symbiotic Consulting** is, upon information and belief, a business

entity acting in concert with or as a staffing agent for AEG Fuels regarding Plaintiff's engagement and does business in Vermont.

## II. JURISDICTION & VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331, as this action arises under federal law, including Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), and the Fair Labor Standards Act (FLSA).

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

7. Plaintiff received a "Notice of Right to Sue" from the EEOC (EEOC No. 510-2026-00069).

8. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in Vermont and suffered the economic and emotional harm described in his District.

## II. FACTUAL ALLEGATIONS

1. **Plaintiff's Professional Standing and Credentials:** Plaintiff is a highly credentialed professional holding a Bachelor of Science (BS) and a Master of Business Administration (MBA) from the University of Vermont (UVM).

2. **Specialized Certifications:** Plaintiff is an Advanced Certified Scrum Master (A-CSM), Certified Scrum Professional (CSPO) Certified Product Owner (CSPO), and holds the prestigious Certified Professional in Human Resources Certification (PHR) and holds an Amazon Web Services Certified Cloud Practitioner and SAF6.0 Certification.

3. **Senior Leadership History:** Prior to Ms. Grout engagement with Defendants, she served in senior leadership roles, including as a Senior Human Resource Manager at Stratton Mountain Resort in Stratton, Vermont, managing over 1,500 employees, and in Human Resource leadership at the Equinox Resort and Spa in Manchester, Vermont overseeing training, recruiting, compliance and more with over 400 employees.

4. **Career Reputation:** Throughout a 20-year career at global Organizations —including General Electric (GE), Walmart, Verizon, Amazon Web Services (AWS), Capital One, Texas Instruments, and World Fuel Services—Plaintiff has maintained an unblemished record. Grout has a professional record and never has been treated like this at a company.

5. While at Amazon Plaintiff was on in the GSLA Leadership Academy for future leaders and a member of the Strategic Accounts team managing diverse co-located teams of 32 plus and budgets over 20 million dollars with perfect Customer Satisfaction Scores.

6. **Industry Contribution:** Plaintiff was a co-founder of SpringbokSQL, a San Francisco-based database technology company, and is a recognized contributor to the open-source community (MySQL, MariaDB and Postgres)

7. **Employment and Misclassification:** Plaintiff was hired on November 4, 2024, as a Senior Scrum Master and Agile Leader.

8. Despite Ms. Grout expertise, Plaintiff was misclassified as an independent contractor while functioning as a full-time employee under the "economic realities" test.

9. **Exemplary Performance:** Throughout Ms. Grout tenure, Plaintiff's performance

was "top notch," as confirmed by the Director of Quality Assurance, Srikanth Kasula, who praised Ms. Grout's work and extensive corporate and enterprise experience and AWS background to senior executives prior to Ms. Grout's termination and the world class experience Ms. Grout brought to AEG Fuels from Amazon, GE and Walmart was great for the company.

10. **Unauthorized Intrusion of Privacy:** It is believed that Defendant Rob Lovejoy accessed Plaintiff's private flight records and travel history without authorization, violating PII protocols and Plaintiff's reasonable expectation of privacy as he knew intimate details of flights, locations and more that were never shared with him.

11. **Targeted Harassment:** Following this access, Plaintiff was subjected to repeated, aggressive, almost daily, questioning by and from the Director of Software, defendant Allen Lee - with whom Ms. Grout had no professional responsibilities to or with, regarding Ms. Grout off-duty activities and Ms. Grout's abouts, when she came in, when she was taking lunch and when she was leaving.

11a.    Even after raising the same to management, Ms. Grout was forced to sit next to Defendant Lee who was then discovered to have and continued to stalk Ms. Grout facebook, instagram pages - at 11pm and at all houre– on Friday and weekends, and made Plaintiff feel uncomfortable, nervous and unsettled being forced to sit directly next to him.

12. When Ms. Grout reported his behavior Ms. Grout was told by two (2) grown men Mr. Robert Lovejoy, CIO and Mr. Ralph Acevedo, VP HR that there was nothing odd about looking at social media profiles late on Fri and Sat nights as it was public knowledge, even though Ms. Grout pleaded to them that she was uncomfortable

and unnerved being forced to sit next to him and wanted to sit with her team and with the other Scrum Masters and her team that had recently moved.

12a.    Ms. Grout was moved and then unconsciously Mr. Lee, on Ms. Grout's personal day off, had her moved back to sit next to him AGAIN and all of her belongings moved without her consent and upon information and before defendant Lee rummaged through the same.

12b.    Mr. Lee's conduct shocks the conscious and in professional unconscionable.

13. **Witness Warnings:** Multiple colleagues with direct knowledge of Mr. Lee's conduct warned Plaintiff to "watch out," confirming the hostility was objectively observable and premeditated.

13a.    Plaintiff was placed in fear

14. **Protected Activity:** On April 2, 2025, Plaintiff formally reported this harassment and the hostile work environment to VP of HR Ralph Acevedo and that Ms. Grout felt unsafe and harassed.  He said a formal investigation would be launched.

15. **Hostile Interrogation:** Immediately following this report, Plaintiff was subjected to a 90-minute interrogation by VP of HR Mr. Ralph Acevedo and CIO Rob Lovejoy in a closed office.

16. **Plaintiff's Contemporaneous Objections:** During this interrogation, Plaintiff repeatedly and explicitly objected to the nature of the questioning. Whereabouts on weekends, evenings, and days off or work from home—when Ms. Grout was in the Florida Keys, Miami, Tampa, Delray, Vermont, or New York—were not the Defendants'

concern and had no bearing on Ms. Grout Knowledge, Skills, Abilities (KSAs), or job performance and kept repeating this over and over to the two men.

17. **Reasonable Expectation of Privacy:** Plaintiff expressed shock several times at the absolute intrusive nature of the inquiry, asserting that as long as Ms. Grout was performing Ms. Grout duties on-site during work hours, Ms. Grout personal movements were outside the scope of the Defendants' legitimate interest. Despite these clear boundaries,

18. Defendants refused to cease their line of questioning, creating an atmosphere of extreme stress and a hostile work environment.

18a.    For Ms. Grout of extreme duress and professional intimidation.

18b.    In Ms. Grout 20 year career in technology and as a human resource leader and trainer of brand standards and certified Train the Trainer teaching managers what not to do and how to be professional Ms. Grout has never witnessed such intrusive and interrogatory behavior in real life.

19. **Defamatory Pretext and Professional Sabotage:** In direct response to Plaintiff asserting her right to privacy and professional boundaries, leadership orally labeled Plaintiff a "liar" and "untrustworthy."

19a.    These baseless characterizations were used as a pretext for Ms. Grout immediate termination, occurring approximately four hours after Ms. Grout reported this to HR and was told a formal investigation would be conducted with all parties.

20. As a Certified Professional in Human Resources (PHR) and an Advanced

Certified Scrum Master (A-CSM) with a 20-year unblemished Ms. Grout's record and in a protected class, Plaintiff asserts that these defamatory labels were intended to—and have—inflicted irreparable harm on Ms. Grout professional standing.

21. These labels strike at the core requirements of Ms. Grout professions, potentially precluding Ms. Grout from ever serving in an HR leadership capacity again, or as an Agile Coach and Agile Leader as Ms. Grout's trust, integrity and reputation are the foundational requirements for any team and enterprise.

22. **Immediate Retaliation:** Approximately four (4) hours after Ms. Grout protected report, Plaintiff was terminated the same day Ms. Grout reported the harassment and hostile work environment to the VP of Human Resources.

23. **Deviation from Protocol:** Despite labeling Plaintiff "untrustworthy," Defendants breached all security protocols by allowing Ms. Grout to return to Ms. Grout desk unescorted, interact with co-workers, and voluntarily surrender Ms. Grout equipment and badge.

23a. Such unsupervised actions of defendants is diametrically opposed to their otherwise false representations as to Ms. Grout's veracity.

24. **Lack of IT Coordination:** The termination was so reactionary when Ms. Grout told the Director of IT that she was terminated. He expressed shock that Ms. Grout was fired and that standard security shut-down steps were skipped in the haste to retaliate when she gave him her computer and badge as company protocols were not followed. So too Ms. Grout's normal access to email and computer systems should have been shut down first and in advance to protect the company assets - yet and still were not done for several days.

25. Symbiotic Consulting also was never notified nor consulted before the retaliatory firing and they were in shock of the lack of proper protocol and rash and hasty firing. Everything up to this point had been going well and ongoing stellar performance reported while on the Finance and Accounting Team.

26. **Witnessed Severance Offer:** During the termination, panicked, Plaintiff placed a call to her fiancé, who remained on the line as a witness. In his presence, Defendants verbally offered a severance of $12,400.

27. **Breach of Contract:** Defendants subsequently have refused to honor this offer and have played games as to talk to the recruiter, talk to the consulting agency and have not remitted the $12,400 in earned wages, acting in bad faith

28. The plaintiff was harassed by defendants.

29. Plaintiff was discriminated against by defendants.

30. Plaintiff was retaliated against by defendants..

## FEDERAL CAUSES OF ACTION

### COUNT I: Sex Discrimination
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

32.    Plaintiff fully incorporates paragraphs 1-30 herein.

33.    Defendant AEG Fuels discriminated against Plaintiff on the basis of sex (female) by subjecting Ms. Grout to hostile work environment harassment, disparate treatment, and termination under circumstances giving rise to an inference of sex-based animus.

34.    Male executives subjected Plaintiff to aggressive, intrusive questioning regarding Ms. Grout off-duty activities and movements—questioning that was demeaning, invasive, and targeted.

35.    Plaintiff was forced to sit directly next to a male coworker (Allen Lee) who stalked Ms. Grout social media accounts, and when Ms. Grout complained, leadership dismissed Ms. Grout concerns.  Female employees are not permitted to be willfully or negligently subjected to such scrutiny and intimidation.

36.    As a direct result of Ms. Grout protected complaints about this harassment, Plaintiff was terminated within hours.

37.    This conduct constitutes intentional sex discrimination and creation of a hostile work environment in violation of Title VII.

38.    Plaintiff was injured hereby.

39.    Such injury will continue until enjoined by this Court.

## COUNT II: Age Discrimination
## Age Discrimination in Employment Act (ADEA)
## 29 U.S.C. § 621 *et seq.*

40.    Plaintiff fully incorporates paragraphs 1-30 herein.

41.    Plaintiff, who is over 40 years of age, was subjected to disparate treatment and termination based on Ms. Grout age.

42.    The intrusive interrogation concerning Ms. Grout off-duty activities, weekend locations, and personal movements—including repeated questioning about travel to Florida, New York, and Vermont—reflected age-based stereotypes about how an older professional employee should conduct herself.

43.    Younger employees were not subjected to similar scrutiny.

44.    Plaintiff's termination occurred under circumstances demonstrating that age was a motivating factor.

45.    Defendant's proffered pretext of "untrustworthiness" and "liar" is false, as confirmed by Ms. Grout documented exemplary performance.

46.    This conduct violates the ADEA.

47.    Plaintiff was injured hereby.

48.    Such injury will continue until enjoined by this Court.

## COUNT III: Retaliation
## Title VII & ADEA (42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d))

49.    Plaintiff fully incorporates paragraphs 1-30 herein.

50.    Plaintiff engaged in protected activity on April 2, 2025, when Ms. Grout formally reported harassment, a hostile work environment, and gender-based discrimination to VP of HR Ralph Acevedo.

51.    Ms. Grout also repeatedly objected during the subsequent interrogation to the invasive questioning regarding Ms. Grout off-duty activities, asserting Ms. Grout reasonable expectation of privacy and professional boundaries—objections that constitute opposition to unlawful employment practices.

52.    Within approximately four hours of these protected activities, Plaintiff was terminated.

53.    The temporal proximity (same day, hours later) is evidence of causation. Defendants' stated reason ("liar," "untrustworthy") is false and a pretext for retaliation, as corroborated by:

(a) the Director of Quality Assurance's confirmation of "top notch" performance;

(b) the Director of IT's shock and confirmation that security protocols were bypassed;

(c) the failure to consult Symbiotic Consulting; and (d) the absence of any prior performance issues.

54.    This retaliation violates Title VII and the ADEA.

55.    Plaintiff was injured thereby.

56.    Such injury will continue until enjoined by this Court.

### COUNT IV: Wage Violations
### Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.

57.    Plaintiff fully incorporates paragraphs 1-30 herein

58.    Plaintiff was misclassified as an independent contractor when Ms. Grout functioned as an employee under the economic realities test.

59.    AEG Fuels controlled the details of Ms. Grout work, supervised Ms.

Grout performance, provided equipment and workspace, and treated Ms. Grout as an integrated part of its business. Despite Ms. Grout employee status, Defendants failed to pay Ms. Grout earned wages and severance in the amount of $12,400, which constitutes unpaid wages.

60.   The FLSA requires payment of all wages earned. Defendants' refusal to pay, despite multiple written acknowledgments of this debt by the CIO and HR leadership, constitutes a willful violation of the FLSA.

61.   Plaintiff is entitled to recover unpaid wages, liquidated damages in an equal amount (totaling $24,800), reasonable attorney's fees, and costs.

62.   Plaintiff was injured hereby.

63.   Such injury will continue until enjoined by this Court.

## COUNT V: Retaliation
### Violation of the FLSA, 29 U.S.C. § 215(a)(3)

64.   Plaintiff fully incorporates paragraphs 1-30 herein.

65.   Plaintiff's protected activity included Ms. Grout internal complaints about harassment and Ms. Grout objections to unlawful employment practices.

66.   In addition, Ms. Grout demand for payment of earned wages is activity protected under the FLSA.

67.   Ms. Grout termination occurred hours after Ms. Grout raised workplace complaints, and Defendants have subsequently withheld wages as first Ms. Grout retaliatory conduct.

68.   The close temporal proximity and false pretext demonstrate that Defendants retaliated against Plaintiff for engaging in protected conduct under the FLSA.

69.    Plaintiff was injured thereby.

70.    Such injury will continue until enjoined by this Court.

## COUNT VI: Invasion of Privacy
### Federal Common Law & Constitutional Privacy (Bivens / 42 U.S.C. § 1983 alternative), and as incorporated under state law

71.    Plaintiff fully incorporates paragraphs 1-30 herein.

72.    Defendant Rob Lovejoy, acting within the scope of his employment at AEG Fuels, intentionally accessed Plaintiff's private flight records and travel history without authorization.

73.    This access was not work-related, was without Plaintiff's consent, and revealed intimate details of Ms. Grout movements and locations that Ms. Grout had never shared with him. Lovejoy then used this information as a basis for the hostile interrogation.

74.    This intrusion into Plaintiff's private affairs constitutes an invasion of Ms. Grout reasonable expectation of privacy and is actionable under federal common law and as a violation of Ms. Grout constitutional privacy interests under the Fourth and Fourteenth Amendments, through *Bivens v. Six Unknown Named Agents* (or under § 1983 if any state action is present). Alternatively, it is incorporated as a pendent state claim.

75.    Plaintiff was injured thereby.

76.    Such injury will continue until enjoined by this Court.

## VERMONT STATE CAUSES OF ACTION
### (Supplemental Jurisdiction – 28 U.S.C. § 1367)

### COUNT VII: Sex Discrimination
### Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. § 495

77.    Plaintiff fully incorporates paragraphs 1-30 herein.

78.    The VFEPA prohibits discrimination on the basis of sex in terms and conditions of employment, including hostile work environment and disparate treatment.

79.    Defendant AEG Fuels violated VFEPA by subjecting Plaintiff to the same conduct alleged in Count I.

80.    Plaintiff has exhausted administrative remedies through the EEOC, and VFEPA claims may proceed concurrently.

81.    Plaintiff seeks all remedies available under VFEPA, including back pay, front pay, emotional distress damages, punitive damages, reinstatement (or equivalent), and reasonable attorney's fees.

82.    Plaintiff was injured thereby.

83.    Such injury will continue until enjoined by this Court.

## COUNT VIII: Age Discrimination
### Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. § 495

84.     Plaintiff fully incorporates paragraphs 1-30 herein.

85.     Defendant violated VFEPA by discriminating against Plaintiff on the basis of age, as alleged in Count II. Vermont law provides broader protections than the ADEA and does not cap compensatory or punitive damages.

86.     Plaintiff seeks full damages under VFEPA.

87.     Plaintiff was injured thereby.

88.     Such injury will continue until enjoined by this Court.

## COUNT IX: Retaliation
### Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. § 495(a)(4)

89.     Plaintiff fully incorporates paragraphs 1-30 herein.

90.     VFEPA expressly prohibits retaliation against an employee for opposing discriminatory practices or participating in proceedings.

91.     Plaintiff engaged in protected activity by reporting harassment and objecting to the invasive interrogation.

92.     Ms. Grout termination within hours constitutes retaliation under VFEPA.

93.     Vermont law permits uncapped compensatory and punitive damages for retaliation claims.

94.     Plaintiff was injured thereby.

95.    Such injury will continue until enjoined by this Court.

### COUNT X: Breach of Contract – Vermont Common Law

96.    Plaintiff fully incorporates paragraphs 1-30 herein.

97.    On April 2, 2025, during Plaintiff's termination meeting, leadership (acting with apparent authority) verbally offered Plaintiff severance in the amount of $12,400.

98.    A third-party witness (Plaintiff's fiancé on an active phone line) overheard this offer.

99.    Plaintiff accepted the offer by continuing to participate in the meeting and by Ms. Grout conduct.

100.    The material terms (payment of $12,400) were definite. Defendants subsequently refused to honor this offer and have failed to pay.

101.    This constitutes a breach of an express or implied-in-fact contract. Plaintiff is entitled to $12,400 in damages, plus pre-judgment interest under 9 V.S.A. § 41a.

102    Plaintiff was injured thereby.

103.    Such injury will continue until enjoined by this Court.

### COUNT XI: Breach of the Implied Covenant of Good Faith and Fair Dealing – Vermont Common Law

104.    Plaintiff fully incorporates paragraphs 1-30 herein.

105.    Every employment contract (including any agreement regarding s

severance and earned wages) in Vermont contains an implied covenant of good faith and fair dealing.

106.    Defendants acted in bad faith by: (a) offering severance, then refusing to pay; (b) acknowledging the debt in writing (by CIO and HR leadership) but playing "games" by directing Plaintiff to speak to the recruiter or consulting agency; (c) terminating Plaintiff in retaliation for protected activity; and (d) misclassifying Plaintiff as an independent contractor to avoid wage obligations.

107.    This bad faith entitles Plaintiff to compensatory damages.

108.    Plaintiff was injured thereby.

109.    Such injury will continue until enjoined by this Court.

### COUNT XII: Invasion of Privacy (Intrusion Upon Seclusion) – Vermont Common Law

110.    Plaintiff fully incorporates paragraphs 1-30 herein.

111.    Vermont recognizes the tort of intrusion upon seclusion. Defendant Rob Lovejoy intentionally intruded upon Plaintiff's private affairs by accessing Ms. Grout confidential flight records and travel history without authorization.

112.    The intrusion would be highly offensive to a reasonable person. Lovejoy was acting within the scope of his employment at AEG Fuels, and AEG Fuels is vicariously liable.

113. Plaintiff is entitled to compensatory damages for emotional distress and, given the willful and malicious nature of the intrusion, punitive damages under Vermont law.

104. Plaintiff was injured thereby.

105. Such injury will continue until enjoined by this Court.

### COUNT XIII: Defamation (Per Se) – Vermont Common Law

106. Plaintiff fully incorporates paragraphs 1-30 herein.

107. Defendants (through Acevedo and Lovejoy) falsely labeled Plaintiff a "liar" and "untrustworthy" during the termination meeting and in the presence of Ms. Grout (including on the witness phone line).

108. These statements are defamatory per se because they (a) impute a lack of integrity essential to Plaintiff's profession (Certified Professional in HR and Certified Scrum Master); and (b) prejudice Plaintiff in Ms. Grout trade or profession.

109. The statements are false—Plaintiff's performance was "top notch" with an unblemished. Grout a 20-year record.

110. Defendants made the statements with malice and reckless disregard for truth. Plaintiff is entitled to presumed damages, special damages, and punitive damages.

111.  Plaintiff was injured thereby.

112.  Such injury will continue until enjoined by this Court.

## COUNT XIV: Intentional Infliction of Emotional Distress (IIED) – Vermont Common Law

113.  Plaintiff fully incorporates paragraphs 1-30 herein.

114.  Defendants' conduct—including the hostile 90-minute interrogation, the repeated aggressive questioning about Plaintiff's off-duty movements, the forced seating next to a stalking coworker, the defamatory labels, and the retaliatory termination—was extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society.

115.  Defendants acted with intent to cause, or reckless disregard of causing severe emotional distress.

116.  Plaintiff has suffered and continues to suffer severe emotional distress, anxiety, humiliation, and professional trauma.

117.  This conduct constitutes IIED under Vermont law.

118.  Plaintiff was injured thereby.

119.  Such injury will continue until enjoined by this Court.

## COUNT XV: Negligent Infliction of Emotional Distress (NIED) – Vermont Common Law

120   Plaintiff fully incorporates paragraphs 1-30 herein.

121.    In the alternative, Defendants breached their duty of care to Plaintiff to maintain a workplace free from harassment, unreasonable intrusion, anD retaliatory conduct.

122.    Defendants knew or should have known that their conduct—including the unauthorized access of Plaintiff's private records, the aggressive interrogation, and the failure to protect Plaintiff from a stalking coworker—would cause Plaintiff severe emotional distress.

123.    Plaintiff suffered manifested physical and psychological harm as a result.

124.    Plaintiff was injured thereby.

125.    Such injury will continue until enjoined by this Court.

### COUNT XVI: Negligent Hiring, Retention, and Supervision – Vermont Common Law

126.    Plaintiff fully incorporates paragraphs 1-30 herein.

127.    AEG Fuels knew or should have known that Rob Lovejoy and Allen Lee were unfit or posed a risk of engaging in harassing, intrusive, and retaliatory conduct.

128.    AEG Fuels failed to supervise Lovejoy (who accessed private flight Records without authorization) and failed to protect Plaintiff from Lee's stalking behavior after Ms. Grout reported it. AEG Fuels also failed to properly train or

supervise Acevedo and Lovejoy in conducting workplace investigations, leading to the retaliatory termination.

129.    This negligence directly caused Plaintiff's damages.

130.    Plaintiff was injured thereby.

131.    Such injury will continue until enjoined by this Court.

### COUNT XVII: Unjust Enrichment – Vermont Common Law

132.    Plaintiff fully incorporates paragraphs 1-30 herein.

133.    Defendants have been unjustly enriched by retaining Plaintiff's earned wages and severance of $12,400 to which they have no right.

134.    Plaintiff conferred a benefit upon Defendants through Ms. Grout exemplary work.

135.    Defendants acknowledged the debt but have refused payment.

Equity requires Defendants to disgorge the $12,400 plus interest.

136.    Plaintiff was injured thereby.

137.    Such injury will continue until enjoined by this Court.

### COUNT XVIII: Quantum Meruit (Contract Implied in Law) – Vermont Common Law

138.    Plaintiff fully incorporates paragraphs 1-30 herein.

139.    In the alternative to breach of contract, Plaintiff provided valuable

services to Defendants.

140. Defendants accepted those services with knowledge that Plaintiff expected compensation.

141. The reasonable value of the unpaid wages and severance is $12,400.

142. Defendants are liable in quantum for that amount.

143. Plaintiff was injured thereby.

144. Such injury will continue until enjoined by this Court.

## COUNT XIX: Misclassification as Independent Contractor (Declaratory Judgment) – Vermont Law

145. Plaintiff fully incorporates paragraphs 1-30 herein.

146. Plaintiff seeks a declaratory judgment under Vermont law that Ms. Grout was an employee, not an independent contractor, under the Vermont economic realities test.

147. This misclassification violated Vermont employment laws and entitled Defendants to avoid wage, tax, and benefit obligations.

148. A declaration of employee status is necessary to establish liability on the wage claims and to support Plaintiff's claims for damages.

149. Plaintiff was injured thereby.

150.    Such injury will continue until enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Samantha Grout respectfully requests that this Court enter judgment in Ms. Grout favor and against Defendants AEG Fuels and Symbiotic Consulting, jointly and severally, and award the following relief:

### A. On Federal Claims:

1. Back pay, front pay, and lost benefits (Title VII, ADEA);

2. Compensatory damages for emotional distress and humiliation (Title VII – up to $300,000 subject to statutory caps based on employer size);

3. Punitive damages (Title VII – subject to statutory caps);

4. Unpaid wages of $12,400 plus liquidated damages in an equal amount ($24,800 total) under the FLSA;

5. Double damages for willful FLSA violations;

6. Pre-judgment and post-judgment interest;

7. Reasonable costs and attorney's fees (available under Title VII, ADEA, and FLSA for prevailing plaintiffs, and applicable to pro se plaintiffs for costs);

8. Such other relief as the Court deems just and proper.

### B. On Vermont State Claims (No Statutory Caps):

1. Compensatory damages for all economic losses, including unpaid wages of $12,400 and lost future earnings;

2. Compensatory damages for emotional distress, humiliation, and loss of professional standing;

3. Punitive damages (available under VFEPA and common law torts);

-25-

4. Treble damages for willful violations Ms. Groute permitted by Vermont law;

5. Pre-judgment interest at the statutory rate (9 V.S.A. § 41a);

6. Post-judgment interest;

7. Costs of suit;

8. Reasonable attorney's fees (available under VFEPA);

9. Declaratory judgment that Plaintiff was an employee;

10. Such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a jury trial on all matters so triable.

Respectfully submitted,


Samantha Grout, *pro se*
155 Warm Brook Rd
Arlington Vermont 05250
802-688-2475
SGROUT@GMAIL.COM