U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 JUN -9 PM 4:39

CLERK

BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

_____X

SAMANTHA GROUT,

                Plaintiff,

v.

AEG FUELS (ASSOCIATED ENERGY GROUP     **2026 CV 124**
ALLEN LEE,                                      Honorable Kevin J. Doyle, USMJ
SYMBIOTIC CONSULTING & JAY SMITH,

                Defendants.

_____X

## PLAINTIFF'S 1ST AMENDED VERIFIED COMPLAINT

**NOW COME** Plaintiff, Samantha Grout, *pro se*, alleging as follows:

I.    **PARTIES**

1.    Plaintiff, Samantha Grout, is an individual residing in Arlington, Bennington County, Vermont

2.    Prior to her engagement with AEG, Plaintiff worked at World Fuel Services as a contractor, Scrum Master, and Tech Lead.

3.    Defendant AEG Fuels (Associated Energy Group) (hereinafter "AEG") is a global aviation fuel supplier with a vast network, providing services in nearly every U.S. state and numerous international locations. AEG conducts substantial business in Vermont. Its primary U.S. offices are located in Florida, Texas, and Nevada.

4. Upon information and belief, AEG Fuels employs well over 100 individuals nationwide—and in fact several hundred—making it a covered employer under Title VII, the ADEA, and the FLSA.

5. Defendant Allen Lee was an employee of AEG and the Director of Software. At all relevant times, Lee acted as an agent of AEG with apparent authority. Lee is sued in his individual capacity for state law claims only, as set forth herein.

6. Defendant Jay Smith was, at all times relevant to this Complaint, a sitting Member of the Board of Directors for AEG. Smith actively participated in the recruitment, oversight, and discrimination described herein, and is sued in his individual capacity for state law claims only.

7. Plaintiff was interviewed for her position at AEG by multiple individuals who knew of her prior work at World Fuel Services, including: Defendant Jay Smith (AEG Board Member and former World Fuel Services Global CIO); Rob Lovejoy (AEG CIO); Ancin (Consultant, Plaintiff's team lead); and Madeleine (Consultant, former World Fuel Services Vice President).

8. Each of these individuals was aware that Plaintiff had worked at World Fuel Services prior to her engagement with AEG. Defendant Jay Smith, as former World Fuel Global CIO, had particular knowledge of World Fuel personnel and operations.

9. Defendant Symbiotic Consulting is, upon information and belief, a business entity organized under the laws of a state other than Vermont, acting as a joint employer and/or staffing agent for AEG Fuels with respect to Plaintiff's engagement. Symbiotic exercised sufficient control over the terms and conditions of Plaintiff's work as to constitute a joint employer under the FLSA economic realities test. Symbiotic was

never consulted before, and expressed shock at, Plaintiff's termination, demonstrating its co-employer relationship.

## II.    JURISDICTION & VENUE

10.    This Court has Federal question jurisdiction under 28 U.S.C. § 1331, as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Vermont whistleblower and fair employment statutes.

11.    This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

11(a). For purposes of diversity jurisdiction under 28 U.S.C. § 1332: Plaintiff Samantha Grout is domiciled in and a citizen of the State of Vermont. Defendant AEG Fuels is incorporated under the laws of [State] with its principal place of business in [Florida/Texas/Nevada]. Defendant Allen Lee is domiciled in and a citizen of the State of [Florida]. Defendant Jay Smith is domiciled in and a citizen of the State of [State]. Defendant Symbiotic Consulting is incorporated under the laws of [State] with its principal place of business in [State]. Complete diversity of citizenship exists between Plaintiff and all Defendants.

12.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

13.    Plaintiff received a Notice of Right to Sue from the EEOC (No. 510-2026-00069) and has exhausted her administrative remedies for all claims requiring such exhaustion.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District: Defendants purposefully directed recruiting activities into Vermont; Plaintiff was solicited, interviewed, and accepted the position while physically located in Arlington, Vermont; Plaintiff performed preliminary work and communications from Vermont at Defendants' direction; the employment relationship was formed through purposeful contacts with Vermont; and Plaintiff suffered ongoing economic, emotional, and reputational harm in this District, where she resides.

15. Additionally, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to personal jurisdiction in this District by virtue of their deliberate recruiting contacts with a Vermont resident and their nationwide commercial operations that include Vermont.

16. AEG Fuels is engaged in interstate commerce and operates across multiple states and internationally, bringing Plaintiff's FLSA claims within this Court's jurisdiction.

## III. FACTUAL ALLEGATIONS

### A. Corporate Background and Pattern of Conduct

17. At all times relevant, Defendant AEG Fuels operated in direct competition with World Fuel Services, a significantly larger global aviation fuel logistics corporation headquartered in Miami, Florida.

18. In an effort to rapidly expand its market share, AEG engaged in a systemic recruitment effort to attract high-level executives and key personnel from World Fuel Services.

19.     This recruitment strategy was driven from the highest levels of the corporation, including by Defendant Jay Smith. Utilizing his insider networks and knowledge as World Fuel's former Global CIO, Smith openly directed personnel, including Plaintiff, stating: "If you know anyone at World Fuel, we want them."

19(a). Defendant Smith, acting in his capacity as AEG Board Member and utilizing his insider knowledge as former Global CIO of World Fuel Services, personally directed and approved the operational and personnel structure under which certain former World Fuel personnel — all of whom were younger than Plaintiff and the majority of whom were male — were granted telecommuting flexibility and autonomous working arrangements. Smith's direction of this recruitment and operational framework, and his personal participation in Plaintiff's interview and onboarding, establish his direct participation in the discriminatory conditions of employment that Plaintiff subsequently experienced. Smith's personal participation in establishing and maintaining this discriminatory operational structure subjects him to individual liability under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495, independently of and without regard to any exhaustion requirement applicable to federal claims.

20.     Upon information and belief, AEG utilized independent contractor classifications for certain former World Fuel personnel. Plaintiff makes no allegation that any non-competition or non-disclosure agreement was violated, and asserts these facts only to show the context of Defendants' knowledge and treatment of Plaintiff.

21.     AEG granted certain executives and consultants 100% remote work capabilities and significant telecommuting autonomy.

22.    Roughly half of Plaintiff's immediate operational teams—comprising no less than twelve (12) individuals—held status as outside consultants or independent contractors, the majority of whom originated from the same third-party recruiting agency.

23.    AEG routinely permitted, authorized, and encouraged these team-level independent consultants to work remotely and to participate in their preferred schedules.

23(a).    The pattern of telecommuting flexibility described herein was not randomly distributed. Every individual on Plaintiff's immediate Fuel Force team who was granted full or partial remote work flexibility was either male, younger than Plaintiff, or both. Plaintiff was the only female team member required to be physically present on-site on a daily basis. No legitimate business justification was offered for this distinction. The only characteristics that distinguished Plaintiff from those granted flexibility were her sex and her age. This pattern, viewed as a whole, gives rise to a compelling inference that the denial of flexibility to Plaintiff — and only Plaintiff — was motivated by discriminatory animus on the basis of sex and age. In maintaining and enforcing this discriminatory structure, AEG's agents — including Lovejoy and Lee — acted with malice or reckless indifference to Plaintiff's federally protected rights, knowing that denying Plaintiff flexibility granted uniformly to male and younger comparators violated clearly established law under Title VII and the ADEA.

**B.    Disparate Treatment: Former World Fuel Personnel**

24.    The following former World Fuel Services personnel were granted telecommuting flexibility by AEG while Plaintiff—the only comparator required to be

on-site daily—was denied the same. Upon information and belief, each listed individual is younger than Plaintiff:  [SEE CHART 1 BELOW]

| Name | Role | Flexibility | Key Facts / Age |
| --- | --- | --- | --- |
| Madeleine | VP Business Transformation Consultant | Telecommute multiple days/week | Former World Fuel VP; interviewed Plaintiff; told Plaintiff she was "hiding" due to non-compete; female |
| Pete | Product Owner / Senior Tax Consultant | Telecommute from Colorado | Former World Fuel VP of Global Tax; served on Plaintiff's direct Fuel Force team; male |
| Ana | Senior Tax Analyst Consultant | Telecommute multiple days/week | Former World Fuel Senior Tax Analyst |
| Courtney | Tax/IT Modernization Consultant | Mostly remote | Former World Fuel VP; younger than Plaintiff |
| Yourdan | Business Analyst Consultant | Telecommute | Former World Fuel 18 years; recruited by Madeleine; younger than Plaintiff |

25.    Upon information and belief, Madeleine was subject to a non-compete agreement with World Fuel Services. Defendant Smith and Madeleine informed Plaintiff that Madeleine was "hiding" at AEG while her non-compete expired. AEG accommodated Madeleine's legal constraints; Plaintiff—who had no non-compete—was denied any accommodation.

### C.    Disparate Treatment: Plaintiff's Direct Fuel Force Team

26. Plaintiff's immediate Fuel Force team—the team she worked with daily—consisted of the following individuals, each of whom was granted full or partial telecommuting flexibility while Plaintiff was required on-site daily. Upon information and belief, each listed individual is younger than Plaintiff: [SEE CHART 2 BELOW]

| Name | Role | Flexibility | Age / Sex |
|------|------|-------------|-----------|
| Pete | Product Owner | Telecommute from Colorado | Male |
| Ancin | Transformational Team Lead | Remote most of week | Male |
| Hari | Quality Engineer Lead | Telecommute nearly full-time | Male; younger than Plaintiff |
| Karin | Business Analyst | Telecommute multiple days/week | Younger than Plaintiff |
| Matt | .NET Developer | 100% remote | Male; younger than Plaintiff |
| Leonall | .NET Developer | 100% remote | Male; younger than Plaintiff |
| Guillermo | .NET Developer | 100% remote | Male; younger than Plaintiff |
| Bhuvana | .NET Developer/Tech Lead | 100% remote | Younger than Plaintiff |

27. Pete is particularly illustrative of AEG's disparate treatment: he was a former World Fuel VP (the same background as Plaintiff), served on Plaintiff's direct Fuel Force team, was granted telecommuting from Colorado. Plaintiff—same background, same team—was denied any flexibility and required on-site daily.

28.    AEG provided no legitimate business justification for denying Plaintiff the flexibility granted uniformly to her peers.

29.    The only meaningful differences between Plaintiff and the individuals listed above are Plaintiff's sex (female) and age (over 40).

29(a).    The age differential between Plaintiff and every comparator granted telecommuting flexibility is not coincidental. Upon information and belief, not a single individual over the age of 40 on Plaintiff's immediate team or among the former World Fuel personnel recruited by AEG was denied the telecommuting flexibility that was uniformly granted to younger colleagues. This age-correlated pattern of differential treatment, combined with AEG's failure to articulate any legitimate business justification for its on-site requirement as applied exclusively to Plaintiff, supports a strong inference that Plaintiff's age was a but-for cause of the adverse employment conditions she experienced, in violation of the ADEA. In subjecting Plaintiff to these age-correlated adverse conditions, AEG's agents acted with malice or reckless indifference to Plaintiff's federally protected rights under the ADEA, knowing that their conduct violated clearly established federal law prohibiting age-based discrimination in the terms and conditions of employment.

### D.    **Plaintiff's Professional Qualifications**

30.    Plaintiff holds a Bachelor of Science (B.S.) and a Master of Business Administration (M.B.A.) from the University of Vermont (UVM).

31.    Plaintiff is an Advanced Certified Scrum Master (A-CSM), Certified Scrum Professional, Certified Product Owner (CSPO), Certified Professional in Human

Resources (PHR), Amazon Web Services Certified Cloud Practitioner, and holds SAFe 6.0 Certification.

32.    Prior to her engagement with Defendants, Plaintiff served in senior leadership roles including Senior Human Resource Manager at Stratton Mountain Resort, Vermont, overseeing more than 1,500 employees, and in HR leadership at the Equinox Resort and Spa, Manchester, Vermont.

33.    Throughout a 20-year career at global organizations—including General Electric, Walmart, Verizon, Amazon Web Services, Capital One, Texas Instruments, and World Fuel Services—Plaintiff has maintained an unblemished professional record.

34.    Plaintiff was a co-founder of SpringbokSQL, a San Francisco-based database technology company, and is a recognized contributor to the open-source community.

### E.    Employment, Misclassification and FLSA Violations

35.    Plaintiff was engaged beginning November 4, 2024, as a Senior Scrum Master and Agile Leader.

36.    Plaintiff was classified by AEG as an independent contractor. Under the economic realities test applicable to FLSA claims, Plaintiff functioned as an employee.

37.    Throughout Plaintiff's tenure, her performance was described as "top notch" by Director of Quality Assurance Srikanth Kasula, who communicated this assessment to senior executives prior to Plaintiff's termination.

38.    The indicia of employee status were pervasive: (a) Plaintiff was prohibited from working for other clients or maintaining other consulting engagements; (b) Plaintiff was required to use AEG-issued equipment (laptop, peripherals, software); (c) Plaintiff

was required to use AEG's email system and Microsoft Teams for all work communications; (d) Plaintiff was required to be physically present on-site in Miami daily; and (e) Plaintiff's daily hours were monitored and logged by AEG management.

39.    Plaintiff was paid a fixed weekly or bi-weekly rate for a defined number of hours without any variation tied to project output, consistent with employee compensation rather than independent contractor project-based payment.

40.    At all relevant times Plaintiff worked at least 40 hours per week. On certain weeks Plaintiff worked in excess of 40 hours and was not compensated at the overtime rate of one-and-one-half times her regular rate, in violation of 29 U.S.C. § 207.

41.    AEG's failure to pay required overtime to a misclassified employee constitutes a willful violation of the FLSA, entitling Plaintiff to liquidated damages and a three-year statute of limitations under 29 U.S.C. § 255(a).

F.    **Harassment, Stalking and Invasion of Privacy**

42.    Upon information and belief, Rob Lovejoy stated that he was aware of Plaintiff's travel while off duty. Upon information and belief, Rob Lovejoy accessed Plaintiff's private flight records, travel history, and other confidential PIP records without authorization. He subsequently demonstrated detailed knowledge of Plaintiff's flights, movements, and locations that were never disclosed to him, supporting a reasonable inference of unauthorized access. The records at issue contain sensitive, non-public location-based and travel data reflecting Plaintiff's movements over time.

43.    Defendant Allen Lee subjected Plaintiff to repeated, aggressive, near-daily questioning regarding her off-duty activities, including her arrival times, lunch schedules, and departure times, despite having no supervisory authority over Plaintiff.43(a). Lee's

surveillance and interrogation of Plaintiff was directed at her specifically and not at male colleagues. Upon information and belief, no male member of Plaintiff's team was subjected to repeated questioning regarding off-duty activities, arrival times, or personal schedules. No male colleague's belongings were moved without consent. No male colleague reported being monitored on social media by Lee during evening and weekend hours. Lee's conduct was directed at Plaintiff because she was female, and constitutes sex-based harassment sufficiently severe or pervasive to alter the terms and conditions of her employment within the meaning of Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Lee's individual liability for this sex-based harassment is cognizable under the Vermont Fair Employment Practices Act, 21 V.S.A. § 495, independently of and without regard to the exhaustion requirements applicable to Plaintiff's federal claims.

44.     Plaintiff was forced to sit next to Lee, who accessed Plaintiff's Facebook and Instagram profiles at 11:00 P.M. and on weekends. This pattern of surveillance made Plaintiff uncomfortable, nervous, and unsettled, and constitutes conduct severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.44(a). Lovejoy's unauthorized access to Plaintiff's private flight records constitutes an independent invasion of Plaintiff's privacy and intrusion upon her seclusion. Plaintiff did not authorize Lovejoy or any AEG representative to access her personal travel records. Lovejoy's subsequent demonstration of detailed, specific knowledge of Plaintiff's flight history — information that could only have been obtained through unauthorized access — establishes the inference of intentional intrusion upon Plaintiff's private affairs in a manner that would be highly offensive to a reasonable person. This conduct occurred in

the context of, and was part of the same pattern as, the sex-based surveillance and harassment described herein.

45.    When Plaintiff reported Lee's conduct to Rob Lovejoy (CIO) and Ralph Acevedo (VP of HR), they dismissed her concerns and informed Plaintiff there was nothing unusual about viewing social media profiles late at night.

45(a). Upon receiving Plaintiff's formal report of Lee's harassing conduct, AEG — through Lovejoy and Acevedo — was on actual notice that Lee posed a risk of harm to Plaintiff in the workplace. AEG's decision to dismiss Plaintiff's complaint, temporarily relocate her, and then permit Lee to cause her belongings to be moved back adjacent to him without her consent, constitutes negligent retention and supervision of Lee. AEG knew or should have known that Lee's continued unsupervised access to Plaintiff created an unreasonable risk of further harm. AEG's failure to take adequate remedial action after receiving actual notice of Lee's conduct is an independent basis for AEG's liability, separate and apart from any respondeat superior theory, and establishes AEG's direct institutional negligence in the retention and supervision of Lee.

46.    Plaintiff was temporarily moved away from Lee, but Lee—on Plaintiff's personal day off—caused her belongings to be moved back next to him without her consent. Upon information and belief, Lee rummaged through Plaintiff's belongings.

47.    Multiple colleagues with direct knowledge of Lee's conduct warned Plaintiff to "watch out," confirming the hostility was objectively observable and known throughout the workplace.

47(a). By way of example and not limitation, during the workweek of approximately [November 11-15, 2024], Plaintiff worked no fewer than [45] hours and

was not compensated at the overtime rate for any hours in excess of 40. During the workweek of approximately [December 2-6, 2024], Plaintiff worked no fewer than [47] hours and received no overtime compensation. During the workweek of approximately [January 6-10, 2025], Plaintiff worked no fewer than [46] hours without overtime compensation. These weeks are representative of a consistent pattern throughout Plaintiff's engagement in which she regularly worked in excess of 40 hours per week without receiving the overtime compensation required by 29 U.S.C. § 207.

## G.     Protected Activity, Retaliatory Interrogation and Termination

48.     On April 2, 2025, Plaintiff formally reported to VP of HR Ralph Acevedo that she felt unsafe and harassed, and identified the conduct described above as discrimination and hostile work environment on the basis of sex and age. Acevedo represented that a formal investigation would be launched.

49.     Immediately following Plaintiff's protected report, Acevedo and CIO Rob Lovejoy subjected Plaintiff to a 90-minute interrogation in a closed office.

50.     During the interrogation, Plaintiff repeatedly objected, asserting that her personal whereabouts on weekends, evenings, and days off—whether in Florida, Vermont, or New York—were not Defendants' concern and bore no relationship to her job performance.

51.     Despite Plaintiff's objections, Defendants refused to cease their questioning, thereby converting the ostensible investigation into further harassment and intimidation.

52.     In direct response to Plaintiff asserting her rights, leadership—including Lovejoy, who had personally interviewed Plaintiff and was fully aware of her

qualifications—labeled Plaintiff a "liar" and "untrustworthy." No factual basis for these characterizations was provided.

53.     Approximately four hours after Plaintiff's protected report, Plaintiff was terminated.

54.     These characterizations—made against a Certified Professional in Human Resources and Advanced Certified Scrum Master with a 20-year unblemished record—constitute defamatory statements that have caused material harm to Plaintiff's professional reputation and future earning capacity.

54(a). The defamatory statements — specifically that Plaintiff was a "liar" and "untrustworthy" — were communicated by Lovejoy and/or Lee to, at minimum: (a) representatives of Symbiotic Consulting who were present or subsequently informed of the basis for Plaintiff's termination; (b) members of Plaintiff's immediate Fuel Force team who witnessed or were informed of the termination and its stated basis; and (c) upon information and belief, to other AEG personnel and potentially to industry contacts, given the interconnected nature of the aviation fuel industry and the overlapping personnel networks between AEG and World Fuel Services. These statements were made without privilege and with knowledge of their falsity or reckless disregard for their truth, as demonstrated by the Director of Quality Assurance's contemporaneous assessment of Plaintiff's performance as "top notch." To the extent any qualified privilege attaches to statements made in the context of an employment termination proceeding, that privilege was defeated by Defendants' actual malice — their knowledge that the characterizations were false at the time they were made.

55.    The retaliatory nature of the termination is further demonstrated by: (a) Defendants' failure to follow standard security protocols (Plaintiff was allowed to return to her desk unescorted and retain system access for several days after termination); (b) the Director of IT's expressed shock that shut-down procedures were bypassed; and (c) Symbiotic Consulting's complete lack of prior notice and expressed shock at the firing.

56.    During the termination meeting, Plaintiff placed a call to her fiancé, who remained on the line as a witness. In his presence, Defendants verbally offered Plaintiff a severance of $12,400.

56(a). In reasonable reliance on Defendants' oral severance commitment, Plaintiff: (a) surrendered AEG-issued equipment and vacated the premises without contest; (b) refrained from immediately seeking emergency injunctive relief or contacting legal counsel to contest the termination; and (c) delayed initiating formal legal proceedings in the reasonable expectation that the promised severance would be honored. Each of these acts of forbearance constitutes independent and adequate consideration for Defendants' promise, and none was a pre-existing legal obligation. Plaintiff's forbearance from immediate legal action is particularly significant given her professional background as a Certified Professional in Human Resources with full knowledge of her legal rights at the time the promise was made.

57.    Defendants have refused to honor this commitment and have not remitted the $12,400 severance.

58.    Allen Lee, Rob Lovejoy, and Jay Smith at all times acted as agents, executives, or board members of AEG with actual and apparent authority.

## IV.  CLAIMS FOR RELIEF

### COUNT I
### <u>Sex Discrimination – Title VII</u>
### (42 U.S.C. § 2000e-2)
### (Against AEG Fuels)

59.  Plaintiff incorporates paragraphs 1 through 58.

60.  Defendant AEG discriminated against Plaintiff on the basis of sex (female) by: (a) subjecting her to a hostile work environment; (b) denying her telecommuting flexibility provided to male comparators; and (c) terminating her employment under circumstances giving rise to an inference of sex-based animus.

61.  The differential treatment between Plaintiff and male comparators on the same team—all of whom were granted flexibility Plaintiff was denied—constitutes disparate treatment on the basis of sex.

62.  Lee's surveillance, the leadership's dismissal of Plaintiff's complaints, and the hostile interrogation together constitute conduct sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment under *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

63.  Plaintiff was injured thereby and seeks compensatory and punitive damages, back pay, front pay, and attorneys' fees.

### COUNT II
### <u>Age Discrimination – ADEA</u>
### (29 U.S.C. § 621 *et seq.*)
### (Against AEG Fuels)

64.  Plaintiff incorporates paragraphs 1 through 58.

65.  Plaintiff is over 40 years of age. Upon information and belief, the comparators granted telecommuting flexibility were younger than Plaintiff.

66. Younger employees were not subjected to the intrusive surveillance, hostile questioning, and interrogation that Plaintiff endured.

67. The termination was motivated, at least in part, by Plaintiff's age, in violation of the ADEA.

68. Defendants' stated reasons for termination ("liar," "untrustworthy") are pretextual, as demonstrated by the documented exemplary performance confirmation from the Director of Quality Assurance.

69. Plaintiff was injured thereby and seeks all relief available under the ADEA.

## COUNT III
## Retaliation – Title VII & ADEA
## (42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d))
## (Against AEG Fuels)

70. Plaintiff incorporates paragraphs 1 through 58.

71. On April 2, 2025, Plaintiff engaged in protected activity by formally reporting harassment, hostile work environment, and sex- and age-based discrimination to VP of HR Acevedo.

72. Within approximately four hours of Plaintiff's protected report, she was terminated. This extraordinary temporal proximity establishes causation.

73. Defendants' stated reasons are pretextual. Corroborating evidence includes: (a) the Quality Assurance Director's "top notch" assessment; (b) the IT Director's shock at bypassed security protocols; (c) Symbiotic's lack of notice; and (d) the absence of any prior disciplinary action or performance issue.

74. Plaintiff was injured thereby.

## COUNT IV
## FLSA – Misclassification and Unpaid Overtime
### (29 U.S.C. § 201 *et seq.*)
### (Against AEG Fuels and Symbiotic Consulting as Joint Employers)

75.     Plaintiff incorporates paragraphs 1 through 41.

76.     Plaintiff was misclassified as an independent contractor. Under the economic realities test, Plaintiff was an employee of AEG and, as joint employer, Symbiotic Consulting.

77.     Plaintiff regularly worked in excess of 40 hours per week. Defendants failed to compensate Plaintiff at the required overtime rate of one-and-one-half times her regular rate of pay for hours worked in excess of 40 in any workweek.

78.     This violation was willful, triggering a three-year limitations period and entitling Plaintiff to liquidated damages equal to the unpaid overtime compensation.

79.     Plaintiff seeks recovery of all unpaid overtime wages, liquidated damages, and attorneys' fees and costs as authorized by 29 U.S.C. § 216(b).

## COUNT V
## Breach of Contract / Promissory Estoppel – Severance
### (Against AEG Fuels)

80.     Plaintiff incorporates paragraphs 56 through 57.

81.     During the termination meeting, and in the presence of a witness (Plaintiff's fiancé, who was on an open phone line), Defendants' authorized representatives offered Plaintiff a severance payment of $12,400.

82.     Plaintiff reasonably relied on this promise to her detriment by surrendering AEG-issued equipment, vacating the premises, and refraining from immediate legal action to enforce her rights.

83.     Defendants have refused to honor this commitment.

84.    Plaintiff is entitled to the promised severance of $12,400, plus interest, under theories of breach of contract and/or promissory estoppel.

## COUNT VI
## Vermont Fair Employment Practices Act – Sex and Age Discrimination
### (21 V.S.A. § 495)
### (Against All Defendants)

85.    Plaintiff incorporates paragraphs 1 through 58.

86.    The Vermont Fair Employment Practices Act prohibits discrimination in the terms and conditions of employment on the basis of sex and age.

87.    Defendants' conduct, as described herein, constitutes unlawful discrimination and harassment in violation of 21 V.S.A. § 495.

88.    Unlike Title VII and the ADEA, the VFEPA permits claims against individual defendants including Allen Lee and Jay Smith for their personal participation in discriminatory conduct.

89.    Plaintiff was injured thereby and seeks all relief available under Vermont law.

## COUNT VII
## Vermont Whistleblower Protection / Public Policy Wrongful Discharge
### (Against AEG Fuels)

90.    Plaintiff incorporates paragraphs 1 through 58.

91.    Plaintiff engaged in protected whistleblowing activity by reporting unlawful discriminatory conduct to HR in good faith.

92.    Plaintiff's termination within hours of this report violates Vermont's strong public policy against retaliatory discharge, as reflected in 21 V.S.A. § 507 and Vermont common law.

93.     Plaintiff was injured thereby and seeks compensatory damages, front and back pay, and punitive damages.

## COUNT VIII
## Defamation
## (Against AEG Fuels, Lovejoy, and Lee)

94.     Plaintiff incorporates paragraphs 52 through 54.

95.     Defendants' publication of false statements—specifically that Plaintiff was a "liar" and "untrustworthy"—to third parties within AEG, to Symbiotic Consulting, and potentially to the wider industry constitutes actionable defamation per se under Vermont law, as these statements directly impugn Plaintiff's fitness for her professions.

96.     These statements were made with knowledge of their falsity or reckless disregard for their truth, as demonstrated by the contemporaneous documentation of Plaintiff's exemplary performance.

97.     Plaintiff has suffered reputational harm, lost career opportunities, and emotional distress as a direct result of these statements.

98.     Plaintiff seeks compensatory and punitive damages.

## COUNT IX
## Invasion of Privacy — Intrusion Upon Seclusion
## (Against AEG Fuels, Lovejoy, and Lee)
## (Vermont Common Law — *Pion v. Bean*, 176 Vt. 1 (2003))

99.     Plaintiff incorporates paragraphs 1-58 specifically 42 through 46a.

100.    Vermont recognizes the common law tort of intrusion upon seclusion, which occurs when a defendant intentionally intrudes upon the solitude or seclusion of another or her private affairs in a manner that would be highly offensive to a reasonable person. *Pion v. Bean*, 176 Vt. 1, ¶ 22 (2003).

101.    Defendant Lovejoy intentionally accessed Plaintiff's private flight records and travel history without authorization, consent, or legitimate business purpose. His subsequent demonstration of specific knowledge of Plaintiff's private travel itineraries — never disclosed to him — establishes intentional intrusion upon Plaintiff's private affairs.

102.    Defendant Lee intentionally accessed Plaintiff's private Facebook and Instagram profiles during late-night and weekend hours, monitored her off-duty social activities and physically intruded upon her personal workspace by causing her belongings to be moved and, upon information and belief, rummaging through those belongings without consent.

103.    Each of these intrusions would be highly offensive to a reasonable person. Plaintiff suffered emotional distress, anxiety, and loss of sense of personal security as a direct and proximate result.

104.    Plaintiff seeks compensatory and punitive damages for Defendants' intentional intrusion upon her seclusion.

## COUNT X
## Negligent Retention and Supervision
### (Against AEG Fuels)
### (Vermont Common Law)

105.    Plaintiff incorporates paragraphs 1-58 specifically 43 through 47 and paragraph 45(a).

106.    AEG owed Plaintiff a duty of reasonable care to provide a workplace free from foreseeable harm caused by its employees and agents.

107.    Upon receiving Plaintiff's formal complaint regarding Lee's harassing and surveillance conduct, AEG had actual notice that Lee's continued unsupervised presence in the workplace posed an unreasonable risk of harm to Plaintiff.

108.    AEG breached its duty by: (a) dismissing Plaintiff's complaint without meaningful investigation; (b) failing to take adequate disciplinary or remedial action against Lee; and (c) permitting Lee to cause Plaintiff's belongings to be relocated back adjacent to him after AEG had acknowledged the problem by temporarily separating them.

109.    AEG's breach was the direct and proximate cause of Plaintiff's continued exposure to Lee's harassing conduct, her emotional distress, and the hostile work environment that ultimately contributed to her constructive working conditions and termination.

110.    Plaintiff seeks compensatory and punitive damages for AEG's negligent retention and supervision of Lee.

## COUNT XI
### Intentional Infliction of Emotional Distress
### (Against AEG Fuels, Lovejoy, Lee, and Smith)
### (Vermont Common Law — Fromson v. State, 2004 VT 29)

111.    Plaintiff incorporates paragraphs 1 through 58 specifically 43(a), 44(a), and 45(a).

112.    Vermont recognizes the tort of intentional infliction of emotional distress where a defendant's conduct is extreme and outrageous, and intentionally or recklessly causes the plaintiff severe emotional distress. *Fromson v. State,* 2004 VT 29, ¶ 15.

113.    Defendants' conduct, taken in its totality, was extreme and outrageous and substantially exceeds all bounds usually tolerated in a civilized society. Specifically: (a) Lee subjected Plaintiff to months of targeted surveillance, late-night social media monitoring, physical intrusion into her personal workspace, and near-daily interrogation regarding her off-duty activities; (b) Lovejoy accessed Plaintiff's private flight records

and used that information to monitor and intimidate Plaintiff; (c) upon Plaintiff's formal report of this harassment, rather than providing protection, Defendants immediately subjected Plaintiff to a 90-minute closed-door interrogation demanding justification for her personal whereabouts on weekends, evenings, and days off; and (d) approximately four hours after Plaintiff exercised her federally protected right to report discrimination, Defendants terminated her employment and publicly labeled her a "liar" and "untrustworthy" — characterizations made with full knowledge of their falsity.

114.    This sequence of conduct — sustained surveillance, physical intrusion, a coercive 90-minute interrogation immediately following a protected report, termination within four hours of that report, and public defamation — constitutes a deliberate and coordinated campaign of intimidation, retaliation, and humiliation that was extreme and outrageous as a matter of Vermont law.

115.    Defendants acted intentionally or with reckless disregard for the substantial probability that their conduct would cause Plaintiff severe emotional distress. Plaintiff has suffered and continues to suffer severe emotional distress, including anxiety, loss of professional confidence, reputational harm, and material economic injury.

116.    Plaintiff seeks compensatory and punitive damages for Defendants' intentional infliction of emotional distress, without limitation by the statutory damages caps applicable to her federal employment discrimination claims.

## V.   PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Samantha Grout respectfully requests that this Court enter judgment against Defendants and award the following relief:

a.   Back pay and all lost wages and benefits from the date of termination;

b.   Front pay and future lost earning capacity;

c.   Compensatory damages for emotional distress, pain and suffering, and reputational harm;

d.   Punitive damages under Title VII (42 U.S.C. § 1981a), the VFEPA, and Vermont common law;

e.   Liquidated damages under the FLSA for willful violations;

f.   The promised severance of $12,400 plus interest;

g.   Attorneys' fees and costs under Title VII, the ADEA, and the FLSA;

h.   Injunctive relief prohibiting further retaliation; and

i.   Such other and further relief as the Court deems just and proper.

## VI.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 9, 2026
     Bennington, Vermont

Samantha Grout, *pro se*
PO 213, 300 Seminary Ave
     Manchester Vermont 05254
167 Hillside Road
     Arlington, Vermont 05250
802-688-2475 / sgrout@gmail.com

## VERIFICATION

I declare under penalty of perjury pursuant to 28 USC 1746, 4 V.S.A. § 27b that the above statement is true and accurate to the best of my knowledge and belief. I understand that if the above statement is false, I will be subject to the penalty of perjury under 13 V.S.A. § 2904(b) or to other sanctions in the discretion of the Court.

Signature: _____

Samantha Grout June 9, 2026